UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DISH NETWORK L.L.C., *et al.*,<br><br>   Plaintiffs,<br><br>v.<br><br>VICXON CORPORATION, *et al.*,<br><br>   Defendants. | Case No. 12-cv-9-L(WVG)<br><br>**ORDER:**<br><br>**(1) DENYING YEO'S MOTION TO DISMISS [DOC. 33], AND**<br><br>**(2) DENYING DEFENDANTS' MOTION TO DISMISS [DOC. 32]** |

On January 3, 2012, Plaintiffs DISH Network L.L.C., Echostar Technologies L.L.C. ("Echostar"), and Nagrastar LLC commenced this action against Defendants Vicxon Corporation and Soo Jong Yeo. Plaintiffs allege violations of the Digital Millennium Copyright Act, Communications Act, and Electronic Communications Privacy Act based on the manufacturing and trafficking of hardware and software allegedly used to circumvent Plaintiffs' security system and intercept copyrighted satellite television programming. Yeo now moves to dismiss for lack of personal jurisdiction, and Defendants collectively move to dismiss two of Plaintiffs' claims. Plaintiffs oppose both motions.

The Court found these motions suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d.1). (Doc. 40.) For the following reasons, the Court **DENIES** Yeo's motion to dismiss and **DENIES** Defendants' motion to dismiss.

//

## I. BACKGROUND

Plaintiffs operate various elements of the DISH Network satellite television distribution system. DISH Network is a multi-channel video provider that delivers audio, video, and data services to subscribing customers throughout the United States. (Compl. ¶ 10.) A DISH Network satellite television system consists of a compatible dish antenna, receiver, smart card, television, and cabling components. (*Id.* ¶ 15.) Echostar provides receivers, dish antenna, and other digital equipment for the DISH Network system. (*Id.*) And Nagrastar provides smart cards and other security technologies that allow paying customers to access decrypted programming while preventing unauthorized reception and viewing of DISH Network programming. (*Id*. ¶¶ 15–17.)

Various devices have appeared in the black market over the years for the purpose of illegally decrypting or "pirating" DISH Network programming. (Compl. ¶ 21.) One method developed to circumvent the DISH Network security system and intercept satellite broadcasts is through the use of "free-to-air" (or "FTA") receivers. (*Id.* ¶ 22.) Circumvention was achieved by loading software that contains the proprietary data and keys to the DISH Network security system onto circuit chips in the FTA receivers, which mimic a legitimate NagraStar smart card. (*Id.*)

In response to countermeasures initiated by Plaintiffs, a new form of satellite piracy emerged, going by names such as "control word sharing," "Internet key sharing," or "IKS." (Compl. ¶ 24.) By using various unauthorized devices and software, a computer server—called an "IKS server"—with subscribed NagraStar smart cards allow the distribution of control words through the Internet. (*Id.* ¶ 26.) Those control words are then used to decrypt DISH Network's signal to view programming without paying a subscription fee. (*Id.*)

Vicxon is a Korean Corporation with its principal place of business in Korea. (Compl. ¶ 4.) Yeo, a Korean resident, is the president and chief executive officer ("CEO") of Vicxon. (*Id*. ¶ 5.) Plaintiffs allege that Defendants "manufacture and traffic in several DISH Network piracy devices," the primary purchaser being a California company based in Escondido called Sonicview USA, Inc. (*Id.* ¶ 28.) "Defendants contracted with Sonicview USA, Inc. to supply

the products, and then delivered them to Sonicview USA, Inc., and related entities in the United States." Plaintiffs further allege that "[t]he relationship between Vicxon and Sonicview USA, Inc. was managed by Defendant Yeo." (*Id.*)

Plaintiffs add that "Sonicview" brand receivers are among the products manufactured and distributed by Defendants. (Compl. ¶ 29.) These receivers are capable of circumventing the DISH Network security system and intercepting satellite television programming using IKS. (*Id.*) Defendants also allegedly manufacture and traffic an adapter for Sonicview receivers, known as the "iHub," "New Link," "SV Lan," or "WizHub," which are collectively referred to as the "Sonicview dongle." (*Id.* ¶ 31.) These dongles enable Sonicview receivers to access an IKS server and obtain control words used to decrypt DISH Network programming without authorization. (*Id.*)

Soniceview high-definition receivers are also configured to accommodate an add-on module known generally as an "8PSK module," and more specifically known as the "A-1 module." (Compl. ¶ 32.) The A-1 module enables Sonicview receivers to pirate DISH Network's high-definition programming, which is broadcast using a "unique combination of 8PSK modulation and Turbo forward error correction." (*Id.*) "Defendants manufacture and traffic in piracy software that is specifically tailored for Sonicview receivers," which is freely available on numerous websites. (*Id.* ¶ 33.)

Plaintiffs allege that Defendants directly, or working at their direction or under their control, test the piracy capabilities of Sonicview receivers, dongles, and piracy software prior to distribution. (Compl. ¶ 34.) They also "performed live demonstrations of their products for customers such as Sonicview USA, Inc. in order to entice customers to purchase them," where the "piracy capabilities of the products were among the features demonstrated." (*Id.* ¶ 35.)

On January 3, 2012, Plaintiffs commenced this action in federal court alleging violations of the Digital Millennium Copyright Act, Communications Act, and Electronic Communications Privacy Act. Yeo now moves to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and Defendants collectively move to dismiss two claims under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs oppose both motions.

## II. JURISDICTION

When the parties dispute whether personal jurisdiction over a foreign defendant is proper, "the plaintiff bears the burden of establishing that jurisdiction exists." *Rios Props. Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). In ruling on the motion, the "court may consider evidence presented in affidavits to assist in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). Where the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Bryton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009). "In determining whether the plaintiff has met this burden, the Court must take the allegations in the plaintiff's complaint as true and resolve the disputed jurisdictional facts in the plaintiff's favor." *Nissan Motor Co., Ltd. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154, 1158 (C.D. Cal. 2000) (citing *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995)). A prima facie showing means that "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Unocal*, 248 F.3d at 922.

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Both the California and federal long-arm statutes require compliance with due-process requirements. Fed. R. Civ. P. 4(k)(2); *Pebble Beach*, 453 F.3d at 1155; *see Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 150, 161 (9th Cir. 2007).

There are two types of personal jurisdiction: general and specific. General jurisdiction "enables a court to hear cases unrelated to the defendant's forum activities[.]" *Fields v. Sedgewick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986). Specific jurisdiction allows the court to exercise jurisdiction over a defendant whose forum-related activities gave rise to the action before the court. *See Bancroft & Masters, Inc. v. August Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

//

The Ninth Circuit employs a three-part test to determine whether the defendant's contacts with the forum state are sufficient to subject it to specific jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Under the three-part inquiry, specific jurisdiction exists only if: (1) the out-of-state defendant purposefully availed itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws; (2) the cause of action arose out of the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1072 (9th Cir. 2001). The plaintiff bears the burden of satisfying the first two prongs of this specific jurisdiction test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach*, 453 F.3d at 1155.

Yeo argues that the Court does not have either general or specific jurisdiction over him. Specifically, in addressing specific jurisdiction, Yeo challenges the first and third prongs of the specific-jurisdiction test. (Yeo's Mot. 7:3–11:25; Yeo's Reply 2:21–5:9.) He contends that "Plaintiffs cannot establish that Yeo deliberately engaged in significant activities with California" and that the "[e]xercise of personal jurisdiction over Yeo would be unfair and would offend notions of fair play and substantial justice." (*Id.*) The Court disagrees.

### A.     Purposeful Availment and the Fiduciary Shield Doctrine

Under the first prong of the specific-jurisdiction test, the plaintiff must establish that the defendant either purposefully availed themselves of the privilege of conducting activities in California, or purposefully directed their activities toward California. *Schwarzeneggar*, 374 F.3d at 802. Although contacts must be more than random, fortuitous, or attenuated, contacts that are "isolated" or "sporadic" may support specific jurisdiction if they create a "substantial connection" with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). "[I]f the defendant directly solicits business in the forum state, the resulting transactions will

probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986) (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984) (solicitation of distributorship agreement); *Taubler v. Giraud*, 655 F.2d 991, 994 (9th Cir. 1981) (solicitation of California market by sending of wine samples)). "Similarly, conducting contract negotiations in the forum state will probably qualify as an invocation of the forum law's benefits and protections." *Id.*

Under the fiduciary shield doctrine, "a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989); *see also Advanced Skin & Hair, Inc. v. Bancroft*, 858 F. Supp. 2d 1084, 1089-90 (C.D. Cal. 2012). In other words, "[t]he mere fact that a corporation is subject to local jurisdiction does not necessarily mean its nonresident officers, directors, agents, and employees are suable locally as well." *Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999). "The mere fact that defendants took actions constituting sufficient contacts with the state on behalf of a corporate employer, however, will not shield the individuals from being subjected to jurisdiction." *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1120 (C.D. Cal. 2009) (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984) ("Each defendant's contacts with the forum State must be assessed individually."); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)).

A corporate officer's contacts on behalf of the corporation are sufficient to subject the officer to a court's jurisdiction if the officer was a "primary participant" in alleged wrongdoing or had "control of, and direct participation in the alleged activities." *Allstar Mktg.*, 666 F. Supp. 2d at 1120; *see also Calder*, 465 U.S. at 790 (finding jurisdiction over individual employees of a corporation who were "primary participants in an alleged wrongdoing intentionally directed at [the forum state]"). "Uncontroverted allegation[s] that the [d]efendant participated in directing the selling, manufacturing, marketing, advertising, or distributing of infringing products to California . . . [are] 'sufficient to establish that [he was] the moving force behind the infringing

activity.'" *Advanced Skin & Hair*, 858 F. Supp. 2d at 1090 (citing *Allstar Mktg.*, 666 F. Supp. 2d at 1120).

Plaintiffs contend that Yeo purposefully availed himself of the privilege of conducting activities in California by authorizing, controlling, participating in, and receiving direct financial benefits from the activities of Vicxon in California. Yeo neither explicitly denies that he authorized, controlled, and participated in these activities in California nor that these activities occurred. Rather, Yeo relies on the fiduciary shield doctrine to insulate himself from jurisdiction by claiming that all contacts with California were conducted on behalf of the Corporation. (Yeo's Mot. 8:6–9:14.) However, Yeo directs the Court only to his own declaration, identifying statements in the declaration that he made eleven trips to California between 2007 and 2010 on behalf of Vicxon to further its interests. (*Id.* at 9:7–14.)

Plaintiffs allege that Yeo authorized and controlled Vicxon's alleged wrongdoings in California, including the trafficking of infringing devices to California. (Compl. ¶ 5.) Although Yeo disputes some of the factual bases for this allegation, the Court must resolve all factual disputes in favor of the plaintiff for the purpose of this motion. *See Pebble Beach,* 453 F.3d at 1154. Additionally, Yeo provides little evidence to directly contradict Plaintiffs' allegations regarding Yeo's role at Vicxon as the moving force behind the infringing activity. *See Advanced Skin & Hair*, 858 F. Supp. 2d at 1090. Therefore, the fiduciary shield doctrine will not shield Yeo from jurisdiction because Plaintiff's allegations sufficiently establish that Yeo was a "primary participant" and the "moving force" behind Vicxon's alleged infringing activity in California.[1] *See Allstar Mktg.,* 666 F. Supp. 2d at 1120. Consequently, the allegations that Yeo conducted business with Sonicview USA, a California company, through Vicxon are sufficient to show that Yeo purposefully availed himself of the privilege of doing business in California. *See Taubler*, 655 F.2d at 994.

---

[1] Yeo applies the same facts to support his fiduciary-shield argument to also support his argument that he individually did not purposefully avail himself to the privileges of conducting activities in California. (Yeo's Mot. 9:16–10:16.) Because the Court finds that he purposefully availed himself through his actions as an officer of Vicxon, the Court need not address whether Yeo individually purposefully availed himself to the privileges of conducting activities in California.

**B.     Reasonableness**

"Even if the first two requirements are met, in order to satisfy the Due Process Clause, the exercise of personal jurisdiction must be reasonable." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) (citing *Ziegler*, 64 F.3d at 474-75).  For jurisdiction to be reasonable, it must comport with "fair play and substantial justice." *Burger King*, 471 U.S. at 476.  A district court presumes, however, that its exercise of jurisdiction over a defendant is reasonable if the first two requirements of the specific-jurisdiction test are met. *See Ballard*, 65 F.3d at 1500.  If the first two requirements are satisfied, then the burden of proof shifts and the defendant must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (quoting *Burger King*, 471 U.S. at 477) (internal quotation marks omitted).  The court considers seven factors in weighing reasonableness: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Harris Rutsky & Co. Ins. Servs. Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003).  Yeo bases his reasonableness argument solely on the first two of the factors. (Yeo's Mot. 10:20–11:25; Yeo's Reply 5:3–9.)

The first factor in determining overall reasonableness looks at the extent and degree to which the defendant purposefully injected himself into the forum. *Ziegler*, 64 F.3d at 475; *but see Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991) ("In light of the first prong of purposeful availment, analysis of this first factor in the third prong [of the specific jurisdiction analysis] would be redundant").  Yeo's argument against this factor rests on his contention that he has no contacts with the forum because all acts in California were on behalf of the corporation. (Yeo's Mot. 11:19–25.)  However, the degree to which Yeo purposefully injected himself into the forum weighs in favor of finding jurisdiction because, as discussed above, the Court will consider Yeo's actions as an officer of Vicxon for the purpose of determining

jurisdiction. Because the primary purchaser of the allegedly infringing products was a company in California, a transaction that Yeo allegedly directed, this factor weighs in favor of finding reasonableness. *Ziegler*, 64 F.3d at 475.

The second factor considers the burden on the defendant defending in the forum. *Harris Rutsky*, 328 F.3d at 1132. The burdens placed on a foreign defendant from outside of the country have significant weight in assessing reasonableness. *Id.* (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 114 (1987)). However, even if litigating the case may be expensive and inconvenient for a foreign defendant, this factor alone is not dispositive in finding unreasonableness. *See Roth*, 942 F.2d at 623. To overcome the exercise of jurisdiction, the inconvenience must be "so great as to constitute a deprivation of due process." *Hirsch v. Blue Cross*, 800 F.2d 1474, 1481 (9th Cir. 1986). Additionally, advances in transportation and telecommunications make the burden on litigating in another country less than in days past. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1115 (9th Cir. 2002).

As a Korean resident who does not speak English, this second factor appears to weigh against the Court exercising jurisdiction over Yeo. However, this factor alone is not dispositive. *See Roth*, 942 F.2d at 623. Also, Yeo has already made at least eleven trips to the forum while conducting business directly related to the actions giving rise to the case at hand. *See Dole Food*, 303 F.3d at 1115. More importantly, Plaintiffs also astutely identify an inconsistency, and perhaps a disingenuousness, in Yeo's argument. (Pls.' Opp'n 8:21–9:4.) As CEO of Vicxon, Yeo is litigating this action regardless the outcome of his jurisdictional challenge. Thus, taking the position that defending the action for himself individually would be unreasonable, but then turning around and defending this action for Vicxon undercuts Yeo's argument that defending this action would be burdensome to him. For one reason or another, Yeo will have to defend this action in this district, either individually or as CEO of Vicxon. Consequently, the Court cannot agree that the exercise of jurisdiction is so inconvenient as to constitute a deprivation of due process. *See Dole Food*, 303 F.3d at 1117.

//
//

In sum, after considering the record presented, and in particular, his actions in California, the Court finds that the fiduciary shield doctrine does not insulate Yeo from jurisdiction, and the exercise of jurisdiction over Yeo is not unreasonable. *See Dole Food*, 303 F.3d at 1117; *Ziegler*, 64 F.3d at 475; *Taubler*, 655 F.2d at 994. Therefore, the Court concludes that Plaintiffs have met their burden to establish that the Court has specific jurisdiction over Yeo. *See Myers*, 238 F.3d at 1072.

## III.   LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all allegations of material fact as true and construe them in light most favorable to the nonmoving party. *Cedars-Sanai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Material allegations, even if doubtful in fact, are assumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the court need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotation marks omitted). In fact, the court does not need to accept any legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2009) (quoting *Hyunh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). It must "appear[] beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995).

**IV.   DISCUSSION**

Defendants move to dismiss Plaintiffs' second and third claims on the grounds that both claims are barred by the statute of limitations. For the reasons below, the Court finds that Plaintiffs' claims are not barred by the statute of limitations.

    **A.   Communications Act**

The Communications Act prohibits the manufacture, assembly, modification, import, export, sale, or distribution of any device knowingly or with reason to know that it "is primarily of assistance in the unauthorized decryption of satellite cable programming." 47 U.S.C. § 605(e)(4). Section 605 does not contain its own statute of limitations. Consequently, "[w]hen a federal statute does not have its own statute of limitations, [the court is] directed to borrow a period from the forum state's analogous state law." *DirecTV, Inc. v. Webb*, 545 F.3d 837, 847 (9th Cir. 2008) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 160 n.13 (1983)). The California Piracy Act, which carries a one-year statute of limitations, is analogous to § 605 and offers the proper statute of limitations period for this case. Cal. Penal Code §§ 593d-593e;

*see DirecTV*, 545 F.3d at 847-48.

"The accrual of federal rights generally remains a matter of federal law even when a limitations period is borrowed from a state source." *DirecTV*, 545 F.3d at 852; *see also Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006). "[A] cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action." *Stanley*, 433 F.3d at 1136 (quoting *Hoesterey v. City of Cathedral City*, 945 F.2d 317, 319 (9th Cir. 1991) (internal quotation marks omitted)).

Defendants argue that the one-year statute-of-limitations period has run. (Defs.' Mot. 4:11–5:25.) They direct the Court's attention to the related case filed in July 2009 involving primarily the same infringing devices, and argue that Plaintiffs were aware of the alleged infringing devices since that time, thereby marking the accrual point of the statute of limitations. (*Id.*) However, § 605 considers each unauthorized device manufactured, assembled, modified, exported, sold, or distributed to be a separate violation. 47 U.S.C. § 605(e)(4); *DirecTV*, 545 F.3d at 849 n.6; *DISH Network, L.L.C., v. Sonicview USA, Inc.*, No. 09-cv-1553, 2012 WL 1965279, at *13 (S.D. Cal. May 31, 2012) (Lorenz, J.). Plaintiffs allege that Defendants were and are engaged in the manufacture and sale of infringing devices. (Compl. ¶ 43.) Thus, each violation marks a new accrual point. *See* 47 U.S.C. § 605(e)(4); *DirecTV*, 545 F.3d at 849 n.6.

Similarly, Plaintiffs request damage awards for each violation of § 605(e)(4). Whether Defendants continued to manufacture, assemble, modify, import, export, sell, or distribute infringing devices beyond the date of the previous case is a question of fact which cannot be decided on a motion to dismiss. *See In re Cases Filed by DIRECTV, Inc.*, 344 F. Supp. 2d 647, 662 (D. Ariz. 2004) (citing *Pavlak v. Church*, 727 F.2d 1425, 1428 (9th Cir. 2004)); *see also Nev. Power Co. v. Monsato Co.*, 955 F.2d 1304, 1307 (9th Cir. 1992) ("In determining when an action has accrued under a discovery-based statute of limitations, the question of when the alleged wrongdoing was or should have been discovered is a question of fact." (alterations and internal quotation marks omitted)). That said, there is a possibility that Plaintiffs will not be entitled to pursue damages for violations outside the applicable limitations period.

Accordingly, the Court **DENIES** Defendants' motion as to the § 605(e)(4) claim.

### B.     Electronic Communications Privacy Act

Section 2511 makes it a violation for anyone to intentionally intercept, endeavor to intercept, or procure any other person to intercept any electronic communication. 18 U.S.C. § 2511(a). Section 2520 provides plaintiffs whose electronic communications are intercepted in violation of § 2511 with a civil action for damages. 18 U.S.C. § 2520(a). The statute specifically provides that "a civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e). Each violation of § 2511 gives rise to a discrete cause of action with its own limitations period. *In re DIRECTV*, 344 F. Supp. 2d at 656 (citing *Fultz v. Gilliam*, 942 F.2d 396, 402 (6th Cir. 1991); *Lombardo v. Forbes*, 192 F. Supp. 2d 893, 899 (N.D. Ind. 2002)).

Plaintiffs allege that Defendants "were and are intercepting and procuring others to intercept" unauthorized satellite transmissions in violation of § 2511(1)(a). Defendants again contend that Plaintiffs were aware of the alleged violation in July 2009 when the prior case was filed and therefore the statute of limitations has run, barring any claim for relief. However, as discussed above, the question of when Plaintiffs first had a reasonable opportunity to discover the violations of § 2511 is a question of fact. *See Nev. Power Co.*, 955 F.2d at 1307; *In re DIRECTV*, 344 F. Supp. 2d at 656 (finding that the question of whether the defendants continued to violate 18 U.S.C. § 2511 was a question of fact not suitable for a decision on the defendants' motion to dismiss). Thus, a question of fact remains as to if and when Defendants unlawfully intercepted transmissions during the applicable two-year statute of limitations. *See In re DIRECTV*, 344 F. Supp. 2d at 656. That said, as above, there is a possibility that Plaintiffs will not be entitled to pursue damages for violations outside the applicable limitations period.

Accordingly, the Court **DENIES** Defendants' motion as to the § 2511(a) claim.

//
//
//
//

## V.     CONCLUSION & ORDER

In light of the foregoing, the Court **DENIES** Yeo's motion to dismiss under Rule 12(b)(2), and the Court also **DENIES** Defendants' motion to dismiss under Rule 12(b)(6).

**IT IS SO ORDERED.**

DATED: February 11, 2013

M. James Lorenz
United States District Court Judge

COPY TO:

HON. WILLIAM V. GALLO
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL